## T. N. SWOFFORD et al. vs. M. E. GARMON.

1. CHANCERY COURT: *Partition of lands. Sale for distribution. Bond of commissioner to sell.*

   The clerk of the chancery court is *ex officio* master or commissioner of the court. He may execute decree without giving special bond in a particular case, unless he is specially required by the court. His bond as clerk would protect all moneys received by him under the orders or decrees of the court, and any misapplication of the same, would be a breach of his bond.

2. SAME: SAME: *Confirmation of sale. Inadequacy of price. Fraud.*

   Mere inadequacy of price is not sufficient to set aside a sale, if made in conformity to the decree of the court unless the inadequacy be so gross as to suggest fraud. Where lands are sold by a commissioner and a portion of the distributees combine and agree not to bid against each other, and they prevent competition at [the sale, by promising to divide their purchase with other bidders, if they will not bid, and thereby prevent bidding, and become the purchasers of the land, at a price far below its value, are sufficient grounds to justify the chancery court in refusing to confirm the sale.

3. SAME: *Sec. 18, art. XII, constitution.*

   Sales of lands under decrees in any quantities less than 160 acres are not in conflict with sec. 18 of art. XII of the constitution.

APPEAL from the Chancery Court of *Lee* County.

Hon. O. H. WHITFIELD, Chancellor.

The opinion of the court contains a sufficient statement of the facts in the case.

The following is assigned for error, to-wit:

1. The court below erred in setting aside the sale made by the commissioner, and in refusing to confirm his report of sale.

2. The court below erred in ordering a resale of the land by the commissioner.

3. The court below erred in requiring the commissioner, who is the clerk of the court, to give additional or special bond, without good cause shown.

*Messrs. Gholson & Hooper*, for appellants:

While it is in the discretion of the court to set aside a sale and reopen the bidding by a resale, it must be remembered that it is a "sound judicial discretion," and not an "arbitrary" one. The court will only refuse to confirm a sale made by a commissioner on the ground of "fraud, mistake, accident or surprise," or some similar ground or cause. Henderson *v.* Herrod, 23 Miss., 434; Mitchell *v.* Harris, 43 id., 314. The English practice of conducting sales by permanent masters, etc., and reopening bidding on advance of price, and thus making the court the vendor, does not prevail in all its extent in this country. Redus *v.* Hayden, 43 Miss., 614. The commissioner sold the land in 40 acre tracts, instead of selling the entire 160 acres together. Const., art. XII, § 18. The provision is that it shall be divided into tracts not to exceed 160 acres. The commissioner was also clerk of the court; as such he had executed a bond; he was liable on that, and he was not required to execute a special bond. The decree will be presumed to be correct. Duncan *v.* M'Neill, 2 Geo., 704; Pollock *v.* Buie, 43 Miss., 140. As to when "additional or special" bond may be required of the clerk, as commissioner or otherwise. Rev. Code, 1871, pp. 194, 197, § 990, 995, 1832. As sustaining this view of the case, see Clifton *v.* Owen, Op. Book "D," p. 425.

*J. A. Brown,* for appellees:

There is a difference between setting aside a sale and refusing to confirm. Confirmation is necessary to the validity of the sale. Many sales have been made and confirmation refused, on the grounds that fair competition in bidding had been prevented. Mitchell *v.* Harris, 43 Miss., 326. The title of the heirs is not divested until confirmation. 1 Cushm., 453.

The fraud in the case at bar was notorious, and the parties were injured by the fraud, the rights of purchasers are fully protected. 2 Hammond, 504; 1 Story's Eq., sec. 293; Lefevre *v.* Laraway 22 Barb., 167, 173; 42 Miss., 326; 44 Ill., 398; 7 Wall., 557; 6 id., 268; 1 Freem. Ch., 441; 6 Rich. Eq., 347; 5 Ind., 232; Martin *v.* Ranlett, 5 Rich. L. R., 541; 24 Grat., 7 Wal., 196.

SIMRALL, J., delivered the opinion of the court.

The chancery court was of opinion that the quarter section of land mentioned in the pleadings could not, beneficially to the co-tenants, be partitioned, and therefore ordered a sale in order that the money might be distributed.

Hawkins, the clerk of the court was appointed a commissioner to make the sale; the decree did not require that he should execute a special bond. But on the coming in of his report, the appellees objected to a confirmation of the sale, for reasons among others that the bond had not been given.

This subject is regulated by statute; the chancery court may appoint two or more persons in each county to be masters or commissioners of the court. Code, 1871, § 1057. No bond is required of them.

Among the duties prescribed, are "to administer oaths," take "depositions" and "execute all decrees directed to them to be executed." Code, 1871, § 1059. The clerk of the chancery court by virtue of his office shall be the master or commissioner of the court, and shall have all the powers that may be, or that hereafter may be conferred by law on the master or commissioner. Code, 1871, § 995. Decrees may be executed by any general and special commissioner therein named. But if none be named then by the sheriff. Code, 1871, § 1266.

The clerk shall give bond in the penalty of not less than five, nor more than twenty thousand dollars, conditioned among other things "for the faithful receipt and payment of all such sums of money, as by law and the orders and decrees of the court it shall be made his duty to receive and pay over." But a special bond may be required in any case. Code, 1871, § 990.

When a special commissioner is appointed to make sale of lands, bond shall be given upon the sale. When a special commissioner sells lands for distribution of money, where partition can not be made, he must give a bond. Id., § 1832.

The summary of these several provisions of the statutes is, that the clerk is, ex officio, a master or commissioner of the court, and

as such, may execute decrees without getting a special bond in the particular, unless thereto specially directed and required by the court. This bond, as clerk, would protect all moneys received by him under the orders and decrees of the court, and any misuse, or misappropriation of such funds would be a breach of his bond.

The chancellor appointed Hawkins, the clerk of his court, to make this sale. Not having been required to execute a special bond, he could properly proceed under the decree; and the objection of the exceptors to his report and sale, for that reason, was not well taken. Clifton v. Owen (MSS. opinion).

The appellees further excepted and objected to a confirmation of the sale, because of the inadequacy of the price, and because of the fraudulent conduct of the appellants to prevent competition at the sale, whereby the property brought less than its fair market value.

This sale was made upon liberal terms of credit, with a view, doubtless, of realizing a good price for the cotenants, some of whom were minors.

It was plainly the duty of the commissioner to obtain the best price. Inadequacy of price, where the sale has been fair and in conformity to the decree, will not, unaided by other circumstances, be sufficient to set aside the sale, unless the inadequacy be so gross as to suggest fraud. Whatever takes from the sale its fairness, such as an interference by the purchaser or the parties interested, with a fair competition in the biddings, or when there has been fraud or misconduct in the purchaser, inexcusable negligence or misconduct in any person connected with the sale; these and such like acts will be good grounds to refuse a confirmation, and order a resale. Such applications are addressed to the sound judicial discretion, for the purchaser does not acquire the title, nor does the sale become complete, until confirmed by the court, or by such unequivocal acts of the parties acquiescing therein, as have the virtue of confirmation, and operate by way of equitable estoppel. Prior to confirmation, the commissioner,

acting on behalf of the court and its officer, can not conclude the sale, without its sanction and approval; until confirmation, the sale is subject to the control of the court. If, therefore, it shall be made to appear that the rights of any parties concerned in it have been seriously prejudiced by fraud, surprise or accident, or nonconformity to the decree, the court will refuse to confirm, and order a resale. Mitchell *v.* Harris, 43 Miss., 326; Redus *v.* Hayden, id., 614; Hopton *v.* Swan, 50 id., 548–9; Rorer Judicial Sales, p. 290, § 855.

The testimony shows that the land was worth from $1,000 to $1,200, one-third more than it brought at the sale. The appellants were anxious to buy forty acres each, so as to secure wood land for the use of their several farms. The tendency of the testimony is to show that they understood each other at and before the sale, that each should not be interfered with by the other at the biddings. It goes further than this. A witness states, in his deposition, that when he made a bid on one of the parcels, Mr. Grant, one of the purchasers and appellants, " came up to him and asked him not to bid any more ; that he was left there to bid off the land for Mr. Graves, and if witness would not bid any more, he would let him have half of it; for that reason he quit bidding." After the sale, when this was reported to Graves, he, Graves, said witness should have twenty acres of the land (he having become the purchaser).

The same witness says, that he made one bid on the land that A. Garmon (one of the appellees) bought, when Garmon told him that was the land he wanted, and witness bid no more.

The witness McFarland says, that he intended to be present at the sale, and bid on the land, but was induced by one of the appellees not to attend; would have given more than the land sold for.

The purchasers deny, in their deposition, all fraud and combination. But these denials from parties interested ought not to overcome the positive testimony referred to. There was enough suspicion thrown over the conduct of the appellees, to bring into

serious doubt the fairness of the sale, if not, indeed, to convince the mind of its unfairness, quite enough to satisfy this court, in view of the inadequacy of the price, that the chancery court did not transcend a sound judicial discretion, in refusing to confirm the sale, but ordering the property to be resold.

The sale of the quarter section, by subdivisions, into lots of 40 acres each, does not conflict with sec. 18 of the 12th art. of the constitution: "All lands sold in pursuance of any decree of courts or execution, shall be divided into tracts not to exceed 160 acres." If the sale were subject to no other objection than this, it must stand. In many circumstance it would be advantageous to, divide a tract into smaller lots than 160 acres.

We find no error in the order of the chancellor, and it is affirmed.